UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARL PLEASANTS,<br><br>    Plaintiff,<br><br>    v.<br><br>TOM RIDGE, SECRETARY<br>Department of Homeland Security,<br><br>    Defendant. | Civil Action No. 00-3094 (JMF) |

MEMORANDUM OPINION

This case was referred to me, upon consent of the parties, for all purposes including trial. Currently pending for resolution is Plaintiff's Renewed Motion for Reconsideration ("Pl.'s Mot."). For reasons stated herein, plaintiff's motion will be granted in part and denied in part.

I.   BACKGROUND

The fundamental facts are discussed at length in previous opinions that I have issued in this case.[1]  For present purposes, the most significant facts are as follows. Beginning in 1992, Carl Pleasants ("plaintiff"), an African-American male, was employed at the Federal Emergency Management Agency ("FEMA"), which is now part of the Department of Homeland Security, and was paid at the GS-13 level. Starting in 1995, plaintiff repeatedly petitioned his supervisor for a pay raise to the GS-14 level, but was always denied. Claiming to be frustrated by this,

---

[1] Pleasants v. Allbaugh, 285 F. Supp. 2d 53 (D.D.C. 2003); Pleasants v. Allbaugh, Civ. A. No. 00-3094, 2002 WL 31520105 (D.D.C. Nov. 12, 2002); Pleasants v. Allbaugh, 208 F.R.D. 7 (D.D.C. 2002); Pleasants v. Allbaugh, 185 F. Supp. 2d 69 (D.D.C. 2002).

plaintiff took advantage of early retirement benefits and left FEMA in January 1999. Plaintiff soon learned that his former position was being advertised at the GS-14 level, and he submitted an application. His application, along with thirteen others, was reviewed by a three-person committee that graded the applicants' written descriptions of their relevant knowledge, skills, and abilities. Plaintiff's application was ranked eighth out of the fourteen applications. However, only the top seven candidates were placed on the best qualified list and allowed to proceed to the next step in the hiring process – an interview with the selection committee. On September 9, 1999, another individual, an Asian female named Kim Roque ("Roque"), was hired for the position.

      Plaintiff filed this suit in December 2000, initially bringing two Title VII claims against FEMA: 1) a pre-retirement failure to upgrade claim; and 2) a post-retirement non-selection claim. The pertinent regulations required that any claim be filed within forty-five days of the discrete act of discrimination, but plaintiff failed to meet this deadline as to his first claim because he retired without ever making any claim about FEMA's failure to promote him. Plaintiff's first claim was dismissed, but his second claim proceeded to trial and the jury determined, in accordance with the special verdict form, that plaintiff's race was a motivating factor in his exclusion from the best qualified list and the jury awarded him $15,000 in compensatory damages.

      After the jury verdict, the parties contested what, if any, equitable relief plaintiff should be afforded. Plaintiff sought to be either reinstated to the position for which Roque was selected, at the GS-14 level, with back pay and all pay and step increases, or remain retired, but have his retirement benefits increased to reflect three years of employment at the GS-14 level. In contrast,

defendant contended that plaintiff was entitled to no more than placement on the best qualified list for a position similar or identical to the position to which he had previously applied. On August 30, 2004, I issued an order "remanding the selection back to the agency, after plaintiff is placed on the best qualified list," reasoning that "a new selection best services all of the interests at issue without disserving any of them." Pleasants v. Allbaugh, No. 00-cv-3094, Memorandum Opinion at 8-9 (D.D.C. Aug. 30, 2004). Specifically, this equitable relief would put "plaintiff in the precise position he would have been had he not suffered discrimination and grants him no 'windfall.'" Id. at 9.

      Shortly thereafter, plaintiff moved for reconsideration of my equitable relief determination on the ground that the position for which he had applied no longer existed. On October 29, 2004, however, defendant filed notice that it had a vacancy very similar to the position for which plaintiff had applied. Plaintiff applied for the vacancy and was placed on the best qualified list. Accordingly, I denied plaintiff's motion for reconsideration without prejudice.

      On April 25, 2005, plaintiff filed the present renewed motion for reconsideration of my equitable relief determination on the ground that, although plaintiff had applied for the recent vacancy, he had not received any indication as to whether he would receive an interview or whether another candidate had been selected. Pl.'s Mot. at 2. Plaintiff was scheduled for an interview shortly thereafter and, to allow time for the selection process, defendant was granted extensions through June 15, 2005 to file its opposition to plaintiff's renewed motion. Ultimately, plaintiff was not selected for the position. Defendant's Opposition to Plaintiff's Renewed Motion for Reconsideration ("Def.'s Opp'n") at 4. Plaintiff now asserts that the re-selection process was a "sham" and the case should have been treated like Allen v. Barram, 215 F. Supp. 2d 184

(D.D.C. 2002), in which the Court awarded the plaintiffs the jobs for which they had applied but were not selected, because a new selection process would have been futile. Plaintiff's Reply to Defendant's Opposition to Renewed Motion for Reconsideration ("Pl.'s Reply Br.") at 1.

Plaintiff also requests that I now rule on his request for attorney's fees, the determination of which was previously deferred pending the resolution of the equitable relief issue. Specifically, plaintiff seeks a $157,221 fee award, representing 388.2 hours at the current *Laffey* Matrix rate of $405 per hour.[2] Pl.'s Mot. at 4; Notice of New Authority.  In opposition, defendant contends that the requested award should be reduced (1) because the fee petition includes entries for clerical tasks and (2) because the award should reflect the over all degree of success actually achieved. Def.'s Opp'n at 4-6.

## II.   DISCUSSION

### A.   Renewed Request for Reconsideration of Equitable Relief Ruling

Plaintiff has moved me to "reconsider [my] decision of August 30, 2004, insofar as it requires him to compete for the position to which he applied and for the defendant to recreate the selection process in a non-discriminatory way." Pl.'s Mot. at 1.  As grounds for reconsideration, plaintiff argues that the re-selection process was a "sham" and that the appropriate equitable

---

[2] The so-called *Laffey* Matrix was originally established in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), and is the benchmark for reasonable fees in this Court.  In plaintiff's renewed motion for reconsideration, he sought $151,398, representing 388.2 hours at the 2004 *Laffey* Matrix rate of $390 per hour.  However, on July 20, 2005, plaintiff filed a Notice of New Authority, indicating that the United States Attorney's Office had issued an updated *Laffey* Matrix and that the applicable rate is now $405.  Even though much of the litigation took place several years ago, "it is acceptable to use current market rates rather than historic rates, as a convenient method of compensating prevailing parties for a delay in receiving payment." Muldrow v. Re-Direct, Inc., 397 F. Supp. 2d 1, 4 n.4 (D.D.C. 2005).  Accordingly, I will apply the current *Laffey* rates in determining plaintiff's attorney's fee award.

remedy would have been for him to be awarded the position to which he applied (*i.e.*, Realty Specialist, GS-1170-14), or a substantially similar position, with full back pay, benefits and interest. Pl.'s Reply Br. at 2-4.  In the alternative, plaintiff offers to remain retired, but be reinstated to the position retroactively for three years, thereby increasing his retirement benefits. Id. at 3 n.1.

"A trial court has broad discretion to grant or deny a motion for reconsideration and will revise its decision only if it finds '(1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or manifest injustice.'" Higbee v. Billington, 290 F. Supp. 2d 105, 106 (D.D.C. 2003) (quoting Regency Communications, Inc. v. Cleartel Communications, Inc., 212 F. Supp. 2d 1, 3 (D.D.C. 2002).  In moving for reconsideration, plaintiff cites to no intervening change in the controlling law, presents no newly available evidence, and fails to demonstrate clear error or manifest injustice.  As I explained in my August 30, 2004 order, plaintiff was entitled to nothing more than the opportunity to reapply without discrimination. Pleasants v. Allbaugh, No. 00-cv-3094, Memorandum Opinion at 8 (D.D.C. Aug. 30, 2004).

My equitable relief determination was reached after weighing the following interests: (1) making plaintiffs whole by putting them in the position in which they would have been had they not suffered discrimination; (2) providing an incentive to parties to bring lawsuits to accomplish the purposes of Title VII; (3) encouraging employers not to discriminate against persons protected by Title VII; (4) preventing plaintiffs from securing relief greater than the harm they actually suffered; (5) respecting agency autonomy in making personnel decisions; and (6) conserving judicial resources. Id. at 7-8.  Because the discrimination found by the jury was

defendant's failure to place plaintiff on the best qualified list, the most appropriate equitable relief was to allow plaintiff to reapply, but to first place him on the most qualified list of applicants. Id. at 8. Giving plaintiff the position for which he applied, as he requests me to do, would grant him more relief than he could legitimately claim and it would offend the interest of agency autonomy, which would be better served by having the agency make the decision in the first place. Id. That the re-selection process was not as fruitful as plaintiff had hoped, is not grounds for me to change my equitable relief determination – non-selection was a risk inherent to the re-selection process.

If, as plaintiff asserts, the re-selection process is really a "sham," then he should have moved for a contempt order. As the situation stands, plaintiff has not provided sufficient grounds for me to reconsider my prior determination.

**B.      Attorney's Fees**

Plaintiff initially moved for attorney's fees at the time he moved for equitable relief. In my August 30, 2004 opinion, I rejected defendant's claim that the fee award should be reduced because plaintiff's failure to promote claim was dismissed. I deferred the ultimate determination of the award until completion of the re-selection process. Pleasants v. Allbaugh, No. 00-cv-3094, Memorandum Opinion at 14, 17 (D.D.C. Aug. 30, 2004). Plaintiff argues that there is no reason to continue to defer the determination of his attorneys' fees award. I agree.

Plaintiff requests $157,221, representing 388.2 hours at the current *Laffey* Matrix rate of $405 per hour. Pl.'s Mot. at 4; Notice of New Authority. In opposition, defendant does not contest the application of the *Laffey* rate, but argues that the requested award should be reduced for two reasons: (1) the fee petition, provided at Exhibit 1 to Plaintiff's Revised Motion for

Equitable Relief, Attorney's Fees and Costs, contains several instances in which plaintiff's counsel is asking for fees for clerical tasks, and (2) the amount plaintiff requests is too high in light of his relatively small degree of success. Def.'s Opp'n at 5-6.

By statute, the prevailing party is entitled to an award of reasonable attorney's fees and costs. 42 U.S.C. § 2000e-5(k).[3] A prevailing party is one that has "demonstrat[ed] actual discrimination in violation of Title VII." Anthony v. Bowen, 848 F.2d 1278, 1281 (D.C. Cir. 1988). Such a party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968). In awarding fees, the court's starting point is to multiply "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). But, "the product of a reasonable hourly rate and the number of hours expended . . . only establishes a base for calculating the amount of reimbursable fees." F.J. Vollmer Co. v. Magaw, 102 F.3d 591, 599 (D.C. Cir. 1996). "If the prevailing party achieved less than complete success, [the court] must reduce that base to reflect the degree of success achieved." Id. The degree of success is assessed by asking two questions: (1) whether the party failed to prevail on claims that were unrelated to the claims on which he succeeded, and (2) whether the party achieved a level of success that makes the hours expended a satisfactory basis for making the fee award. Id. (citing Hensley, 461 U.S. at 434). In other words, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensely, 461 U.S. at 435.

---

[3] This citation to the United States Code is to the electronic version available through Westlaw and Lexis.

Although defendant contends that several of the fee petition entries reflect time spent on clerical tasks, defendant does not identify any such entries. Without knowing which specific entries defendant believes reflect clerical work, it is impossible for me to determine whether they are in fact appropriate entries. Regardless, "several" instances of clerical work together would represent only a tiny percentage of the total fees sought – a few bruised apples do not justify rejection of the entire crop when it arrives at a market.

With regard to defendant's second objection, I find that plaintiff's degree of success was substantial and find no justification for reducing the fees based on the over all relief obtained. Defendant argues that plaintiff's $157,221 request must be evaluated against the $15,000 jury award plus whatever amount may be assigned to placement on the best qualified list. Def.'s Opp'n at 6. In arguing for the reduction of the fee award, defendant stresses that the fees sought are ten times the amount of the damages awarded. Id. at 7. However, the degree of success obtained is not measured, as the defendant implicitly assumes, solely by the compensatory damages recovered at trial. The purpose of granting any kind of relief in Title VII cases is to make the victim whole for his injuries. Albemarle, 422 U.S. at 418. This "make whole" provision is not limited to compensatory damages. Indeed, the Supreme Court was quite clear in Albemarle that equitable remedies are often necessary components of relief. The purposes of Title VII would not be served if fee awards were reduced merely because the rights involved were not pecuniary in nature. See Blum v. Stenson, 465 U.S. 886, 893 (1984) (citing S. Rept. No. 9401011, at 6 (1976)) ("It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation . . . and not be reduced because the rights involved may be nonpecuniary in nature.").

Therefore, in measuring the degree of success obtained, the court should consider both the value of the equitable and compensatory awards.

Plaintiff may not have received a large damages award, but his success was substantial. The jury found that it was more likely than not that defendant discriminated against plaintiff in not placing him on the best qualified list and awarded him compensatory damages. The value of allowing plaintiff to recompete without discrimination should not be measured by whether plaintiff was ultimately selected for the position. The purpose of Title VII cases is to correct and prevent discrimination in employment. Here, the discrimination against plaintiff was corrected (*i.e.*, he was placed on the best qualified list) and one can hope that defendant has been deterred from discriminating in its hiring process in the future.

Moreover, the total amount of time plaintiff's attorney spent litigating this matter reflects the amount of work that he reasonably would have had to put into this case. This case has been in litigation since 2000, during which time plaintiff had to, among other things, take eight depositions during discovery, defend a motion to dismiss, try a case to verdict, and file a motion to compel and a subsequent motion for sanctions. Pl.'s Reply Br. at 7. Accordingly, I will grant plaintiff's attorney's fee request in its entirety.

### III.   CONCLUSION

For the forgoing reasons, plaintiff's renewed motion for reconsideration will be denied as the Court's determination of equitable relief, but granted as to his request for attorneys' fees.

```
_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE
```

Dated: